## IN THE COURT OF APPEALS OF IOWA

No. 24-0230
Filed May 22, 2024

**IN THE INTEREST OF A.W.,**
**Minor Child,**

**A.D., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam Sauer,

Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Cameron M. Sprecher, Mason City, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney

General, for appellee State.

Jane Wright, Forest City, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Tabor and Badding, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to her child, born in 2020.[1]  She claims the State failed to prove the ground for termination cited by the juvenile court, termination is not in the child's best interests, a six-month extension would eliminate the ground for termination, and the court should apply a permissive exception to preclude termination.  Upon review, we affirm.

## I.    *Background Facts and Proceedings*

This family came to the attention of the Iowa Department of Health and Human Services (the department) in October 2020, upon the child's birth when the mother and child tested positive for methamphetamine and THC.  The mother admitted the use of methamphetamine during her pregnancy.  The child was removed from the mother's custody, adjudicated in need of assistance, and placed in family foster care.  In April 2021, the child was placed with a different family in a pre-adoptive placement.

The mother engaged, inconsistently, in substance-use treatment and testing.  She periodically tested positive for methamphetamine, and the department had concerns about known substance users staying at her home.  However, the mother was consistent with attending visits with the child and exhibited positive parenting skills during those contacts.  In August 2021, the department recommended termination of the mother's parental rights due to her lack of progress in treatment and inability to maintain sobriety.  The juvenile court,

---

[1] The father's parental rights were terminated in September 2021.

however, granted the mother's request for additional time to work toward reunification.

The court entered a review order in March 2022, noting the mother had "progressed to semi-supervised interactions and those are going well." The court further noted, in part:

> [The mother] completed a hair stat drug test and the results came back on March 2 and it was positive for methamphetamines. [The mother] denies use. [The mother] provided the department with a list of medications so research can be done on whether a medication caused the positive test. [The mother] does not have any behavioral indicators of use and has passed her other drug tests.

The court emphasized the importance for the mother to "surround herself with sober supports."

The mother continued to test positive for methamphetamine, but she disputed the accuracy of the test results. She was not participating in mental-health or substance-use treatment. Although the mother had progressed to unsupervised visits with the child, the visits reverted back to supervised due to positive drug test results. In August, the court noted the mother's "sobriety is the main reason why reunification is unable to occur at this time."

By spring 2023, the mother had progressed to extended overnight visits with the child as well as a span of negative drug tests. In April, the child was returned to the mother's custody. The placement was short-lived. In June, the court entered an order removing the child, upon reports the mother was allowing known substance users to stay at her home. Specifically, the mother's boyfriend was arrested at her home on an outstanding warrant and found with a large amount of methamphetamine at the time of the arrest. Police also found drug paraphernalia

in the mother's garage.  The mother initially denied knowledge of substance use by the individuals, but she later changed her story after she tested positive for methamphetamine in a hair stat test.[2]  The department also noted unresolved concerns about the condition of the home.

The State initiated termination-of-parental-rights proceedings in September. The termination hearing took place in January 2024.  The mother did not testify but requested an additional six months to work toward reunification.  The caseworker acknowledged the department had been on the verge of recommending closure of the case approximately six months prior but ultimately the mother's lack of stability or demonstrated sobriety was an obstacle preventing the child's return to her custody, observing "we're three-plus years into the case.  We're still having positive tests."  The caseworker further testified the condition of the mother's home was an "ongoing issue," stating she was recently in the home but "became so overwhelmed with the smell and the condition [she] had to leave."  The department and guardian ad litem recommended termination of parental rights.

The court entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) (2023).  The mother appeals.

## II.    Standard of Review

We review termination-of-parental-rights proceedings de novo.  *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021).  Upon our review, our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the

---

[2] The mother also tested positive for methamphetamine from a sweat patch test in November.  However, the caseworker acknowledged the patch was left on for over a month and not taken off at the appropriate time.

defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

### III.    Analysis

*A. Ground for Termination.*  The mother challenges the termination of her parental rights under Iowa Code section 232.116(1)(h).  Relating to that paragraph, the mother seems to claim the State failed to show by clear and convincing evidence the child could not be returned safely to her custody at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(f)(4).  According to the mother, despite her progress, "[a] couple individuals were located [at the mother's home] and the department has since held that against" her and "the department and the State decided that they should file a termination a mere month after the last removal just due to one drug test."  The mother maintains the child's removal from her custody "was a [b]it ridiculous and should never have occurred."

This case has been open for longer than three years—since the child's birth in October 2020.  As the caseworker noted, the child "has spent 95% of her life out of the parental home."  The department has offered a myriad of services and support to correct the issues leading to the child's removal and adjudication. During that time, the court showed marked patience for the mother.  Despite the mother's continued positive drug tests, the court allowed the mother several chances to demonstrate meaningful progress and sobriety.

Even if we were to discount the mother's positive drug tests, concerns remain about the mother's ability to parent the child safely.  Perhaps the most disturbing aspect of this record is the mother's blatant disregard for the risk her relationships with known substance users poses to the child.  The child was

returned to the mother's custody in April 2023. In June, police came to the mother's home and discovered known substance users, drug paraphernalia, and methamphetamine. Initially, the mother reported the individuals "hadn't been staying" there. Then, after she tested positive for methamphetamine, the mother's "story changed." Her "last story was . . . that she was in the room with others smoking" so she tested positive due to exposure. Moreover, the mother has a longstanding relationship with the individual police arrested during that incident. Immediately following the arrest, the caseworker reported to the court as follows:

> On June 29, 2023, this worker became aware that [the mother] had been having frequent, ongoing contact with [D. D. after his arrest] while he remained housed in the Cerro Gordo County Jail via phone and text. These conversations appear to indicate that she and [D.D.] are in some sort of a relationship and that he was either residing in or consistently frequenting the home. In one of those conversations [the mother] can be heard saying, "I didn't say this to [the caseworker] but I was sitting there thinking to myself man y'all mother fuckers are dumb because I've been talking to him and he's been a part of our lives since before [the child] came home and he's been seeing her every day since she came home like y'all don't know shit and if that kid wouldn't have been in the garage none of this would be going on right now." [The mother] also put [the child] on the phone and said "wanna come say hi to daddy?" [The mother] is fully aware that the Department would not and previously did not approve of [D.D.] She also appears to not understand the significance that he was arrested at her home and had over 9 grams on meth on him and now is facing an additional felony charge.

The mother understood she was not to have contact with substance users and had been advised as such on numerous occasions. Even the mother's probation officer testified if she had known the mother was staying with "somebody that had an active warrant," she would have told the mother "[t]his cannot be

happening and cannot continue."[3]  Based on these and other facts in the record, we agree with the court's finding the child could not be returned to the mother's custody at the time of the termination hearing.  Iowa Code section 232.116(1)(h) was satisfied.

*B. Best Interests.*  Termination also must serve the child's best interests. *See* Iowa Code § 232.116(2).  When determining best interests, we give primary weight to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental and emotional conditions and needs of the child."  *See id.*  Here, these factors all weigh in favor of termination.  We agree with the juvenile court's analysis on this point:

> While [the mother] has been cooperative with services, it has been three years and the Department is dealing with the same issues.  [The mother]'s ability to maintain a safe and healthy environment for [the child] is still in doubt.  [The child] is in need of permanency and the back and forth between homes for interactions has become increasingly difficult and confusing for her.  It is clear that [the mother] loves [the child], however, [the mother] has not demonstrated an ability to keep [the child] safe. . . .  [The child] has lived with [the foster family] for a majority of her life and is extremely bonded to them.

*C. Exception to Termination.*  The mother claims termination is not in the child's best interests because "[t]he child has a very close bond with her mother and the termination of the parental rights for mother would be highly detrimental to the child due to the closeness of the parent-child relationship."  "Consideration of the parent-child bond is not a part of our best-interests analysis."  *In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023).  However,

---

[3] During the majority of this proceeding, the mother was on probation for a "controlled-substance offense."

section 232.116(3)(c) allows the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." There is no question the mother and child share a bond; indeed, we believe the mother's active participation in visits with the child likely persuaded the court to decline the department's recommendation for termination of her parental rights sooner. Even so, under this record, the mother has not established termination of her parental rights will be detrimental to the child.

*D. Additional Time.* In passing, the mother requests "she be given an additional six months to work towards reunification and to show that she is capable of being a mother to her child." To grant an extension of time for reunification, the court must "enumerate the specific factors, conditions, or expected behavioral changes" providing a basis to determine the child will be able to return to the parent at the end of the additional six months. Iowa Code § 232.104(2)(b).

When asked whether she believed "in an additional six months, [the] mother could have [the child] back in her home," the caseworker responded, "I'm going to say no. I'll just leave it at that"; "[b]ased on the history of the case, no, I don't think that she can be returned and successfully maintained." As the guardian ad litem opined:

> Reading through the court documents for the last three years, it sounds like same story, different day through all the documents that are in there. Same problems exist today as when we started, except the baby isn't positive at birth anymore. The baby's not positive anymore because the baby's in good care.
> Children deserve to have good care without being around drug users, without police officers coming into the house to arrest people that are using drugs. It's not fair. She's not old enough to

protect herself.  She needs a stable life; and I don't want to see a same story, different day six months from now.

On this record, the court had no basis on which to grant an extension.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**